```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------x
                                     :
UNITED STATES OF AMERICA,            :    08 Cr. 529 (LMM)
                                     :
        - v -                        :    MEMORANDUM AND
                                     :    ORDER
DAVID MESSINA and THOMAS ALEXANDER,  :
                                     :
              Defendants.            :
                                     :
-------------------------------------x
```

McKENNA, D.J.,

**1.**

Defendant David Messina moves for an order suppressing all physical evidence seized during an inventory search of his rental vehicle on March 22, 2008, in Woodbury, Minnesota.  The Government has asserted that the search of the vehicle was permissible as a valid inventory search following impoundment of the vehicle, while the defense contends that both the impoundment and the subsequent search were improper and that all of the evidence obtained as a result of the search should be suppressed.

The Court held an evidentiary hearing on December 22, 2008.

**2.**

> It is well recognized in Supreme Court precedent that, when law enforcement officials take a vehicle into custody,

>they may search the vehicle and make an inventory of its contents without need for a search warrant and without regard to whether there is probable cause to suspect that the vehicle contains contraband or evidence of criminal conduct. This is because "[t]he policies behind the warrant requirement are not implicated in an inventory search, nor is the related concept of probable cause." Such a search is not done to detect crime or to serve criminal prosecutions. It is done for quite different reasons: (1) to protect the owner's property while it is in police custody; (2) to protect the police against spurious claims of lost or stolen property; and (3) to protect the police from potential danger. The service of these objectives is wholly independent of whether the contents of the car figure in any way in a criminal investigation or prosecution.

United States v. Lopez, 547 F.3d 364, 369-70 (2d Cir. 2008) (quoting Colorado v. Bertine, 479 U.S. 367, 371 (1987)) (other citations omitted).

The Supreme Court, having

>recognized the danger to privacy interests protected by the Fourth Amendment if officers were at liberty in their discretion to conduct warrantless investigative searches when they suspected criminal activity, which searches they would subsequently justify by labeling them as "inventory searches." ... has stressed the importance, in determining the lawfulness of an inventory search, that it be conducted under "standardized procedures."

2

Id. at 370 (quoting Florida v. Wells, 495 U.S. 1, 4 (1990), and Bertine, 479 U.S. at 374, n.6) (other citations omitted).

> The Fourth Amendment does not permit police officers to disguise warrantless, investigative searches as inventory searches. However, the Supreme Court has not required an absence of expectation of finding criminal evidence as a prerequisite to a lawful inventory search. When officers, following standardized inventory procedures, seize, impound, and search a car in circumstances that suggest a probability of discovering criminal evidence, the officers will inevitably be motivated in part by criminal investigative objectives. Such motivation, however, cannot reasonably disqualify an inventory search that is performed under standardized procedures for legitimate custodial purposes. Under the Supreme Court's precedents, if a search of an impounded car for inventory purposes is conducted under standardized procedures, that search falls under the inventory exception to the warrant requirement of the Fourth Amendment, notwithstanding a police expectation that the search will reveal criminal evidence. If good faith is a prerequisite of an inventory search, the expectation and motivation to find criminal evidence do not constitute bad faith.

Id. at 372 (citations omitted).

**3.**

Defendants David Messina and Thomas Alexander were arrested by Woodbury police officers on March 22, 2008, at

3

Sportsman's Warehouse, a store in Woodbury, for shoplifting.

Police Officer Jeffrey Gottstein, called by the government, was the only witness to testify at the suppression hearing. He responded to the request of the officers who had arrested the defendants and, initially, tried to assist in determining whether the identification provided by the defendants was accurate.[1]

The officers collectively determined to bring the arrested defendants to the Washington County jail "[t]o provide positive identification, to get fingerprints, to assist in that positive identification, and also to have them post bail so that they returned to Minnesota on the charges they had been charged with." (Id. at 10.)

Officer Gottstein was given by another officer the keys to a Hertz vehicle rented by defendant Messina. (Id. at 10-11.) The vehicle was about 35 to 50 footsteps from the front door of Sportsman's Warehouse. (Id. at 16.) He called Hertz "for a number of reasons":

> First of all, to find out who the renter of the vehicle was supposed to be. Also to inform them that the occupants had been arrested and were

---

[1] Mr. Messina provided an out-of-state identification (which, for reasons explained by Officer Gottstein, see Transcript at 22-25) is not conclusive, and a social security card (see Summers Decl., Jan. 5, 2009, and Gottstein Aff., Jan. 7, 2009), which does not contain, among other things, a picture.

4

> going to be removed from the area where the vehicle was, to find out if they wanted me to do anything with the vehicle. And also to make sure that if the vehicle wasn't returned on time, that it wasn't stolen.
>
> I didn't want them to waste other resources of other police agencies on reporting a stolen vehicle. When the renter might be in jail and not able to return the car.

(Id. at 11.)  Hertz requested that the vehicle be impounded. (Id.) Officer Gottstein testified that it was his general practice to call the owner of a car -- including a rental car -- when its occupants were arrested. (Id. at 11-12.)

After determining that the vehicle was unoccupied, and having the exterior of the vehicle sniff-searched by a K9 that traveled with Officer Gottstein, he and two other officers searched the vehicle and prepared an "impound inventory report" (id. at 12), following the Woodbury police applicable written policy.[2]  The search revealed, inter alia, a GPS navigation unit, a notebook listing various items, including dietary supplements and over-the-counter pharmaceuticals, a black, magnetic item and other

---

[2] See Gov't Ex. 1. The document, as relevant, provides that a vehicle may be searched without a warrant "[w]hen a vehicle is impounded, officers of the Woodbury Police Department are required to search and inventory the contents of the vehicle. This search will include the trunk, bed, rear hatch area, trailer, glove box, interior compartments and containers." (Id. at 3.)

5

magnetic discs, the vehicle rental agreement, UPS shipping receipts, two dozen unopened three-pack toothbrush heads, and a cooler bag containing dietary supplements. (Ex. 2, Memorandum of Law in Support of Defendant Messina's Motion to Suppress Physical Evidence ("Def.'s Mem.") 4-6.)

**4.**

Messina challenges the legality of the impoundment of the vehicle and of the subsequent inventory search. Messina argues that the officers' impoundment of the rental car failed to further the officers' public safety and community care-taking function – justifications the Supreme Court articulated as legitimate for impounding a vehicle in South Dakota v. Opperman, 428 U.S. 364, 368-69 (1976). Messina also argues that the impoundment was impermissible because the Woodbury Police Department did not have standardized procedures governing when a vehicle should be impounded. Finally, Messina challenges the resulting inventory search, averring that the officers' motivation for conducting the search was to further their investigation and that the search was done in bad faith.

> Police may impound vehicles, "in the interests of public safety and as part of what the [Supreme] Court has called 'community caretaking functions.'" Opperman, 428 U.S. at 368. Police officers may exercise their discretion

6

> in deciding whether to impound a vehicle, so long as that discretion is "exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." <u>Colorado v. Bertine</u>, 479 U.S. 367, 375 (1987).

<u>United States v. Best</u>, 415 F. Supp. 2d 50, 53 (D. Conn. 2006).

Here, Messina's rental car was parked in the Sportsman's Warehouse's parking lot. (Tr. at 26.) Defendants Messina and Alexander were arrested for shoplifting. (<u>Id.</u> at 8.) The officers took Messina to jail to fingerprint him, as the officers were unable to verify the authenticity of his out-of-state license.[3] (<u>Id.</u> at 10, 23-24.) The officers also wanted bail to be arranged, since they were concerned that Messina, as an out-of-state resident, would not return to Minnesota for a court proceeding. (<u>Id.</u> at 10.) Officer Gottstein testified that in his experience, booking may have taken anywhere from one hour to several days. (<u>Id.</u> at 20.) He further testified that it is the Woodbury Police Department's standard practice to call the owner of a car when the occupants are arrested to determine what, if anything, to do with the vehicle. (<u>Id.</u> at 11.) Accordingly, Officer Gottstein called Hertz, as the

---

[3] Alexander was also taken to jail. (<u>Id.</u> at 20.)

7

registered owner of the car, and Hertz requested that he impound the car. (Id. at 11-12.)

The officers' decision to impound the rental car was a legitimate exercise of the officers' community caretaking function. "Safeguarding individuals and their property from harm is the essence of the 'community caretaking function' of the police." Best, 415 F. Supp. 2d at 56 (citing cases). Officer Gottstein testified that

> [i]n Woodbury we have a very high theft for motor vehicle crime rate. And when you leave a vehicle that's parked in a retail establishment for any period of time, especially with an item like a GPS unit, and clear visible sight, it is going to be very susceptible to have a window broken, and that item removed or stolen, or anything else in that vehicle that someone might see when they are walking by.

(Tr. at 20-21.) He further testified

> [w]e have a very significant theft, motor vehicle problem of unoccupied motor vehicle problems in Woodbury. It is probably the number one crime that we experience in our community. So we do everything in our power to protect any residents or owner from being a victim of one of those crimes.

(Id. at 31.) Given this uncontroverted evidence, the officers' impoundment of the vehicle falls within the authority of the officers' community caretaking function.

8

Messina avers that the impoundment of the vehicle was unreasonable because the officers' discretion as to whether to impound it was unfettered.  Messina emphasizes that the Woodbury Police Department Manual ("the Manual") does not address circumstances in which officers should impound vehicles.  While Officer Gottstein's testimony corroborates that the Manual is silent on the issue (id. at 33), Officer Gottstein also testified that the Department has in place a standardized practice governing when vehicles should be impounded.  (Id. at 33-34.)  He testified that when officers arrest occupants of a vehicle

> We make every effort to contact the registered owner to find out what they want to have done with the vehicle. And we also, if the person who's being arrested owns the vehicle, give them the option to have us tow it so that it is safe.  And if we can't get ahold of a registered owner of a vehicle, oftentimes we will impound the vehicle to protect that registered owner's property.

(Id. at 33.)  Officer Gottstein testified that this procedure was his uniform practice and the uniform practice of other Woodbury officers.  (Id. at 33-34.)  So, while Woodbury Police Department may not have a written policy addressing when a vehicle should be impounded, uniform department practices limit officers' discretion in deciding when to impound a vehicle.  "Police officers may exercise

9

their discretion in deciding whether to impound a vehicle, so long as that discretion is 'exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'" Best, 415 F. Supp. 2d at 53 (quoting Bertine, 479 U.S. at 375).  Here, the officers' decision to impound the vehicle was constrained by standard department practice, which is sufficient to comport with the Fourth Amendment.

While inventory searches are constitutional, they may not be used as a pretext for unlawful warrantless searches. See Lopez, 547 F.3d at 370 (citing Florida v. Wells, 495 U.S. 1, 4 (1990)).  Accordingly, the Court requires that a lawful inventory search be conducted pursuant to "standardized procedures."  See id.  "[W]hen a police department adopts a standardized policy governing the search of the contents of impounded vehicles, the owners and occupants of those vehicles are protected against the risk that officers will use selective discretion, searching only when they suspect criminal activity and then seeking to justify the searches as conducted for inventory purposes." Id. at 317.

The Woodbury Police Department's standard governing inventory searches meets this standard.  The policy permits a warrantless search when "the vehicle is inventoried for

10

impounded purposes." (Gov't Ex. 1 at 1-2.) The policy further states that "[w]hen a vehicle is impounded, officers of the Woodbury Police Department are <u>required</u> to search and inventory the contents of the vehicle. This search will include the trunk, bed, rear hatch area, trailer, glove box, interior compartments and containers." (<u>Id.</u> at 3.)(emphasis added). Officer Gottstein testified that "the reason why we went through the vehicle and completed the impound inventory, is because any time that we tow a vehicle on behalf of somebody, we complete an impound inventory search, which is per departmental policy." (Tr. at 30.) This policy is sufficiently particularized so as to "safeguard the interests protected by the Fourth Amendment." <u>See</u> <u>Lopez</u>, 547 F.3d at 370.

Finally, Messina argues that the search was unlawful because the officers wanted or expected to find criminal evidence relating to Messina's shoplifting charge. This argument is also unavailing. "If a search of an impounded car for inventory purposes is conducted under standardized procedures, that search falls under the inventory exception to the warrant requirement of the Fourth Amendment, notwithstanding a police expectation that the search will reveal criminal evidence." <u>Lopez</u>, 547 F.3d at 372. Here, because the officers impounded and inventoried the vehicle

11

according to standardized Woodbury Police Department policies and practices, the search was lawful. Any expectation they had that they might find evidence of Messina's shoplifting does not negate the legality of that search.

**5.**

For the foregoing reasons, Defendant's Motion to Suppress the evidence found in the rental car is DENIED.

SO ORDERED.

Dated: February 24, 2008

*[signature]*

Lawrence M. McKenna
U.S.D.J.